`UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 208-2 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| MARLIN MARTINEZ | ) | |
| | ) | |

### GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE

The United States of America, by its attorney, PATRICK J. FITZGERALD, United States

Attorney for the Northern District of Illinois, respectfully moves to admit certain evidence of

defendant Marlin Martinez's receipt of proceeds of the charged wire fraud scheme and false

statements regarding her income.  Specifically, the government seeks to admit (1) bank records

which indicate, among other things, that $41,405 in cash was deposited into the defendant's

checking account from July 18, 2006 to February 8, 2008, during the charged scheme; (2) mortgage

records which indicate that on or about May 14, 2007 the defendant and her husband purchased a

$485,000 home; (3) payroll records from Wal-Mart and Veolia Environmental Services which

indicate, among other things, that in 2007 the defendant and her husband earned a combined

$59,596.76 before taxes; (4) two mortgage applications containing false statements by the defendant

of additional income; and (5) IRS records of the defendant and her husband.  This evidence of

unexplained wealth is admissible as evidence that the defendant received proceeds of the charged

wire fraud scheme.  In support of the present motion, the United States submits the following:

### I.    FACTUAL BACKGROUND

As alleged in the superseding indictment, from at least October 2006 until her arrest on

March 13, 2008, defendant was involved in a scheme to defraud Wal-Mart that resulted in losses of

approximately $262,144.80.  During this period, defendant and co-defendant Lorna Clarke

("Clarke") were employed as Accounting Office Associates at the Wal-Mart store located in

Northlake, Illinois.  Their responsibilities included preparing deposits, counting cash, processing

checks received in the store's cash office, and maintaining an appropriate cash and change balance

in the cash office for the store's operations.  The defendant and Clarke were also responsible for

transferring cash from the cash office to the appropriate cash register when the register's cash drawer

was short of funds.

As part of the scheme, the defendant documented cash purportedly delivered from the cash

office of Wal-Mart's Northlake store ("cash office") to a specific cash register (register number 77)

within the Wal-Mart store without actually transferring the cash to the register.  Instead, the

defendant took this cash for her own use and benefit, after giving Clarke a portion of the money for

Clarke's own use and benefit.  To conceal the theft, the defendant and Clarke placed counterfeit or

altered checks into the daily deposit at the cash office.  The defendant and Clarke obtained checks

and altered the checks before placing them into the daily deposit.  The total dollar amount of the

counterfeit or altered checks defendant and Clarke placed into the daily deposit on a specific day

equaled the total amount of cash that defendant and Clarke falsely recorded as cash delivered to

register number 77 on that day.

Records of the joint LaSalle Bank account in the name of the defendant and her husband

indicate that, in 2007, $15,107.70 was direct deposited into the account by Wal-Mart for defendant's

wages. The LaSalle Bank records also indicate that, in 2007, $28,610.69 was direct deposited into

the account by Veolia Environmental Services ("Veolia"), the employer of defendant's husband, for

his wages. These amounts correspond with payroll records from Wal-Mart and Veolia, which show

that in 2007 the defendant and her husband made a combined $59,596.76 before taxes and

$43,718.39 after taxes.[1]  However, in addition to the direct deposits from Wal-Mart and Veolia, the

LaSalle Bank records indicate that $41,405 in cash was deposited into the checking account owned

by the defendant and her husband from July 18, 2006 to February 8, 2008.

In addition, JPMorgan Chase Bank records indicate that on May 14, 2007, the defendant and

her husband purchased a $485,000 home.  The monthly payment on the mortgages obtained by

defendant and her husband was $3,339.29, whereas the combined net monthly income of the

defendant and her husband in 2007 was $3,643.20.  Thus, the monthly total of the mortgages and

property tax due on the home exceeded their combined net income.

The mortgage applications completed by the defendant and her husband were included in the

records from JPMorgan Chase Bank.  In the applications, the defendant states that she was employed

as an "Accounting Office Manager" at Wal-Mart, with a monthly income of $5,250, even though

her actual monthly income in 2007 was $1,823.32.  The defendant's husband states that he is a

"Commercial Truck Driver" with a monthly income of $5,750, even though his actual monthly

income in 2007 was $3,143.08.  The combined monthly income stated on the mortgage applications

is $11,000, for a combined yearly income of $132,000.  This is more than double the pre-tax income

that the defendant and her husband received from Wal-Mart and Veolia.

On August 12, 2008, this Court issued an order directing the Internal Revenue Service

("IRS") to disclose tax returns and return information for the defendant and her husband.  Although

---

[1] Records from Wal-Mart, Veolia, and LaSalle Bank indicate that the defendant and her husband had similar income in late 2006 and early 2008.  The year 2007 data is used for illustrative purposes, because it is the only full calendar year during the period that the defendant participated in the scheme.

the IRS has not yet produced this information to the government, it is the government's

understanding that some of the defendant's IRS information will be available prior to trial, which

is currently scheduled for August 25, 2008.

## II.    THE BANK RECORDS, PAYROLL RECORDS, AND MORTGAGE RECORDS ARE ADMISSIBLE AS EVIDENCE OF UNEXPLAINED WEALTH.

Evidence of unexplained wealth is admissible as circumstantial evidence of criminal activity

if the unexplained wealth was acquired contemporaneously with the alleged criminal activity, if the

wealth creates an inference that the defendant was involved in the criminal activity, and if the

government presents evidence that the wealth was not obtained through legitimate means. *United*

*States v. Harris*, __ F.3d __, 2008 WL 3012362 at *10 (7th Cir. 2008) (*citing United States v.*

*Carrera*, 259 F.3d 818, 829 (7th Cir. 2001)); *accord United States v. Penny*, 60 F.3d 1257, 1263 (7th

Cir. 1995). "Expensive trips, gambling, and other instances of free spending and high living may

be pertinent in crimes involving a motive of enrichment." *Carrera*, 259 F.3d at 829 (*quoting United*

*States v. Kwitek*, 467 F.2d 1222, 1225 (7th Cir. 1972)). "[I]t is well-settled in this circuit that

evidence of an unexplained, lavish lifestyle is probative of the existence of income derived from

[illegal activity]." *United States v. Smith*, 308 F.3d 726, 737 (7th Cir. 2002).

Defendant allegedly participated in a scheme that defrauded Wal-Mart of $262,144.80 in

cash. Evidence that $41,405 in cash was deposited into the defendant's checking account during

a contemporaneous period is evidence that the defendant was involved in the cash-intensive scheme.

"[E]vidence of wealth may be admissible to establish that a person engaged in a cash-intensive

criminal enterprise, even if there is another explanation for the extra money." *United States v.*

*Hogan*, 886 F.2d 1497, 1507 (7th Cir. 1989). Similarly, defendant's purchase of a $485,000

home–with mortgage payments and property tax payments that exceeded the combined net income

of the defendant and her husband–is evidence of unexplained wealth that is probative of the existence of income derived from the fraudulent scheme.

Moreover, evidence that $41,405 in cash was deposited into the defendant's checking account or that the defendant and her husband purchased a $485,000 home is not unfairly prejudicial. Just as "there's nothing inherently illegal or improper about owning or driving a Lexis automobile," there is nothing inherently illegal or improper about possessing $41,405 in cash or purchasing a $485,000 home. *Harris*, 2008 WL 3012362 at *3. Moreover, unlike the "expensive trips," "gambling," "free spending," and "high living" discussed in *Carrera* and *Kwitek*, the purchase of a home–while indicative of a lifestyle above defendant's means–is not overly extravagant. In this case, there is little risk of unfair prejudice, and the evidence is highly probative of the defendant's involvement in the charged scheme.

In addition, payroll records of Wal-Mart and Veolia are admissible as "evidence that the wealth was not obtained through legitimate means." *Harris*, 2008 WL 3012362 at *10; *Carrera*, 259 F.3d at 829; *Penny*, 60 F.3d at 1263. This evidence, like evidence of the defendant's unexplained wealth, is not unfairly prejudicial and is probative of the defendant's involvement in the charged scheme.

## III. THE MORTGAGE APPLICATIONS ARE ADMISSIBLE BECAUSE THEY ARE INEXTRICABLY INTERTWINED WITH THE CHARGED SCHEME, OR IN THE ALTERNATIVE, UNDER FRE 404(B) AS EVIDENCE OF MOTIVE, PLAN, AND ABSENCE OF MISTAKE.

Generally speaking, "evidence that is so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime" is admissible under the "inextricably intertwined" or "intricately related" doctrines. *United States v. Wantuch*, 525 F.3d 505, 517 (7th Cir. 2008); *United States v. Gougis*, 432 F.3d 735, 742 (7th Cir.

2005); *Thompson*, 286 F.3d 950, 968 (7th Cir. 2002); *United States v. Johnson*, 248 F.3d 655, 664-65 (7th Cir. 2001). Moreover, under this "well-established line of precedent," "[t]he admissibility of such evidence is limited only by the balancing test set forth in Rule 403 and does not implicate the character/propensity prohibition of Rule 404(b)." *Wantuch*, 525 F.3d at 517; *United States v. Samuels*, 521 F.3d 804, 813 (7th Cir. 2008); *United States v. Griffin*, 493 F.3d 856, 867 (7th Cir. 2007).

In the instant case, the mortgage applications are intricately related to the charged wire fraud scheme for three reasons. First, the plan underlying the charged scheme was for the defendant to fraudulently obtain money from Wal-Mart in order to live beyond her means. The defendant's inflation of her income to obtain a $485,000 home, with mortgage payments and property taxes that exceeded the combined net income of the defendant and her husband, is evidence of her knowing participation in the charged scheme, which included the use of funds fraudulently obtained from Wal-Mart for the defendant's own use and benefit. Second, the mortgage applications explain the circumstances surrounding the defendant's purchase of a $485,000 home. If the defendant's admissions in the mortgage applications are not presented to the jury, the jury might infer that JPMorgan Chase was presented with records of additional legitimate sources of income by the defendant and her husband. Third, the mortgage applications are evidence of motive to continue the fraud scheme, because the defendant's false statements to JPMorgan Chase, and the resulting mortgage, committed the defendant and her husband to mortgage and property tax payments that they could not make without income from the charged scheme. Therefore, because the mortgage applications explain the circumstances surrounding, and tend to prove, an element of the charged crime, they are admissible under the intricately related doctrine. *Wantuch*, 525 F.3d at 505.

In addition to their relevance under the "intricately related doctrine," admission of the mortgage applications also passes the balancing test set forth in Federal Rule of Evidence 403. Under Rule 403, evidence must be admitted unless "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The Seventh Circuit has "emphasized that most relevant evidence is, by its very nature, prejudicial, and that evidence must be *unfairly* prejudicial to be excluded." *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996) (internal quotation marks omitted) (emphasis in original); *see also United States v. Hattaway*, 740 F.2d 1419, 1425 (7th Cir. 1984) ("[V]irtually all evidence submitted by the prosecution is prejudicial to the defendant; the relevant inquiry is whether any unfair prejudice from the evidence substantially outweighs its probative value."). When balancing the probative value of a piece of evidence against its potential prejudice, courts lean in favor of admitting evidence "where the acts involved, or explained, the circumstances of the crime charged, where the acts provided the background for, or development of, the crime charged, and where the acts completed the story of the crime on trial." *United States v. Lloyd*, 71 F.3d 1256, 1265 (7th Cir. 1995) (internal quotation marks omitted).

Moreover, the Seventh Circuit has recognized that evidence is not unfairly prejudicial when the evidence is probative to counter a defense. *Wantuch*, 525 F.3d at 518. In this case, the government anticipates that the defendant will argue that co-defendant Clarke engaged in the scheme without the defendant's involvement. Defendant's statements on the mortgage applications that she and her husband made $11,000 a month–$132,000 a year–constitute an admission that her and her husband's income is far higher than the wages they receive from Wal-Mart and Veolia. Moreover, the fact that the defendant attributed this income to Wal-Mart and Veolia suggests that the income was derived from the charged scheme, not an additional legitimate source of income. The defendant

provided no information in the sections of the mortgage applications that request information

concerning "other income." This evidence, taken together, directly contradicts defendant's

anticipated defense–that she did not obtain proceeds from the charged scheme. Since the mortgage

applications are relevant and necessary to explain the circumstances surrounding, and tend to prove,

an element of the charged crime, the evidence is not unfairly prejudicial and should be admitted.

However, in the alternative, the mortgage applications are independently admissible under

Rule 404(b). Rule 404(b) permits the admission of evidence of "other crimes, wrongs, or acts" for

the purpose of establishing matters other than propensity, such as intent, preparation, plan,

knowledge, identity, and *modus operandi*, among other things.[2] *See Huddleston v. United States*,

485 U.S. 681, 685 (1988) (Rule 404(b) permits the introduction of extrinsic act evidence that "bears

upon a relevant issue in the case such as motive, opportunity, or knowledge.").

The drafters of Rule 404(b) intended for it to be a rule of inclusion, not exclusion. *United*

*States v. Jordan,* 722 F.2d 353, 356 (7th Cir. 1983). Indeed, the intent of the rule is to emphasize

the admissibility of "other crime" evidence. *Id.* The statutory list of permissible purposes for which

evidence may be admitted under the rule is not exhaustive but is illustrative, and emphasizes

admissibility. *See United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008)[3]; *United States v.*

*Manso-Portes*, 867 F.2d 422, 426 (7th Cir. 1989). Indeed, the *Taylor* decision emphasized that

---

[2] Rule 404(b) states, in part, that "[e]vidence of other crimes, wrongs, or acts is not
admissible to prove the character of a person in order to show action in conformity therewith. It
may, however, be admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

[3] Although *Taylor* questioned the usefulness of the inextricably intertwined doctrine, it is
worth noting that the Seventh Circuit subsequently reaffirmed the utility of the doctrine in
*United States v. Wantuch*, 525 F.3d 505 (7th Cir. 2008) and *United States v. Samuels*, 521 F.3d
804 (7th Cir. 2008).

"[a]lmost all evidence admissible under the 'inextricably interwoven' doctrine is admissible" under

Rule 404(b). *Taylor,* 522 F.3d at 735. To make that point, the Court affirmed the introduction of

evidence that explained the "absence of mistake" on the part of a witness, who testified that she was

able to understand a term used by the defendant as a reference to a drug sale because she had

accompanied him on prior drug sales. *Id.* Additionally, the Court in *Taylor* also stated that "the

need to avoid confusing the jury" is "a legitimate item to add to the list" of permissible Rule 404(b)

purposes. *Id.*

The admissibility of Rule 404(b) evidence hinges on the following four factors: "whether

the evidence (1) is directed toward establishing a matter in issue other than the defendant's

propensity to commit the crime charged, (2) shows that the other act is similar enough and close

enough in time to be relevant to the matter in issue, (3) is sufficient to support a jury finding that the

defendant committed the similar act, and (4) has probative value which is not substantially

outweighed by the danger of unfair prejudice." *United States v. Whitlow*, 381 F.3d 679, 686 (7th

Cir. 2004); *United States v. Gibson*, 170 F.3d 673, 678 (7th Cir. 1999). Under this test, the mortgage

applications should be admitted.

The first element is met under the facts of this case. The government is offering evidence

that the defendant received proceeds of the crime. Defendant's statements on the mortgage

applications that she and her husband made $11,000 a month–$132,000 a year–constitute an

admission that her and her husband's income is far higher than the wages they receive from Wal-

Mart and Veolia. Moreover, the fact that the defendant attributed this income to Wal-Mart and

Veolia suggests that the income was derived from the charged scheme, not an additional legitimate

source of income. The defendant provided no information in the sections of the mortgage

applications that request information concerning "other income." This is strong evidence that the defendant participated in the charged scheme. In addition, the evidence is highly probative of defendant's motive and intent to participate in the fraud scheme in order to support a monthly mortgage that exceeded her and her husband's legitimate income. Finally, the evidence shows that defendant's receipt of cash from Wal-Mart was not a mistake or accident, but part of a scheme that she knowingly and intentionally participated in to support a lifestyle beyond her legitimate means of income.

The second factor–that the prior acts be similar enough and close enough in time to be relevant–is also satisfied in this case. In assessing the similarities between the admissions in the mortgage applications and the charged offense, courts are to focus on the common characteristics between the two as opposed to the distinct characteristics. *United States v. Moore*, 115 F.3d at 1355 (1993); *United States v. Rollins*, 301 F.3d at 519. The other acts do not have to be identical to the charged conduct, but must have sufficient points in common. *United States v. Elizondo*, 920 F.2d 1308, 1320 (7th Cir. 1990); *United States v. Joseph*, 310 F.3d 975, 978 (7th Cir. 2002) (test for similarity is not rigid; two crimes need not be identical, but only "sufficiently alike" to be admissible under Rule 404(b)). While mortgage fraud is not identical to wire fraud, the statements in the mortgage applications were essential to the charged wire fraud scheme because part of the charged scheme was for the defendant to fraudulently obtain money from Wal-Mart in order to live beyond her means. The defendant's inflation of her income to obtain a $485,000 home, with mortgage payments and property taxes that exceeded the combined net income of the defendant and her husband, is evidence of the charged scheme, which included the use of funds fraudulently obtained from Wal-Mart for the defendant's use and benefit.

Also, the statements in the mortgage applications were certainly close enough in time to satisfy the relevancy requirement, given that they were made *during* the charged scheme. The Seventh Circuit has held that the passage of even ten years between the prior acts and the indicted act is close enough in time to satisfy this requirement. *United States v. DeCastris*, 798 F.2d 261, 265 (7th Cir. 1986). The evidence will show that the statements in the mortgage application were made by defendant on or about May 14, 2007, during the charged scheme. This sequence of events satisfies this element of the second prong of the Rule 404(b) test. *Cf. United States v. Polichemi*, 219 F.3d 698, 709-10 (7th Cir. 2000) (finding ten-year time gap close enough); *United States v. Wimberly*, 60 F.3d 281, 285 (7th Cir. 1995) (finding thirteen-year time gap close enough).

Regarding the third prong, a court need only determine whether a jury could reasonably find the conditional fact by a preponderance of the evidence. *United States v. Brownlee*, 937 F.2d 1248, 1255 (7th Cir. 1991) (citing *Huddleston*, 485 U.S. at 690 (1988) (third prong focuses on whether "the jury can reasonably conclude that the act occurred and that the defendant was the actor")); *United States v. Bailin*, 977 F.2d 270, 280-81 (7th Cir. 1992). The evidence in this case satisfies this standard, given that there can be no serious question that the defendant signed and adopted the mortgage applications and that the defendant's wages from Wal-Mart were far lower than the amount stated in the mortgage applications.

Finally, the test requires that the probative value of the evidence at issue not be substantially outweighed by the danger of unfair prejudice. No unfair prejudice exists in this case. While defendant's false statements on the mortgage applications, like any relevant evidence, will be prejudicial to some extent, it will not be unfairly prejudicial, as stated above. "Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an

emotional one, rather than on the evidence presented." *United States v. Bogan*, 267 F.3d 614, 622

(7th Cir. 2001).  The evidence at issue will not induce the jury to decide the case on an improper

basis.  To the contrary, the evidence at issue will provide the jury with the full context of the

fraudulent scheme at issue.  A jury is capable of understanding that defendant is not on trial for

defendant's statements in her mortgage applications and that the evidence is being offered merely

to show defendant's motive and plan.

Moreover, any prejudice could be cured by a limiting instruction to the jury directing them

not to consider the evidence for any purposes other than motive and plan, thereby minimizing any

prejudicial impact resulting from the admission of such evidence.  *See United States v. Souffront*,

338 F.3d 809, 834-35 (7th Cir. 2003); *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993) (juries

are presumed to follow limiting instructions); *see also United States v. Long*, 86 F.3d 81, 86 (7th Cir.

1996) ("limiting instruction mitigates the prejudicial impact of Rule 404(b) evidence"); *United*

*States v. Curry*, 79 F.3d 1489, 1497 (7th Cir. 1996).

Evidence of defendant's false statements in the mortgage applications are admissible

pursuant to Rule 404(b).  Accordingly, this Court should grant the government's motion.

## IV.    THE IRS DOCUMENTS ARE ADMISSIBLE EITHER AS EVIDENCE THAT THE DEFENDANT DID NOT OBTAINED WEALTH THROUGH LEGITIMATE MEANS OR AS AN ADMISSION OF INCOME FROM THE CHARGED SCHEME.

Although the government has not yet received records from the IRS, the government

anticipates receiving at least some IRS records prior to trial.  In addition, the government has served

the defendant and her husband with trial subpoenas, asking them to produce their income tax returns.

If the defendant reported income from the charged scheme on her income tax returns, the returns

should be admissible as an admission of the defendant that she received income from the charged

scheme.  However, if the defendant and her husband failed to report income aside from the income

from Wal-Mart and Veolia, the returns are admissible as "evidence that the wealth was not obtained

through legitimate means." *Harris*, 2008 WL 3012362 at \*10; *Carrera*, 259 F.3d at 829; *Penny*, 60

F.3d at 1263.  This evidence, like evidence of the defendant's unexplained wealth, is not unfairly

prejudicial and is probative of the defendant's involvement in the charged scheme.

## IV.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant this

motion *in limine* and allow the government to introduce the defendant's bank records, mortgage

records, payroll records, mortgage applications, and IRS records at trial.

<blockquote>
Respectfully submitted,<br>
PATRICK J. FITZGERALD<br>
United States Attorney
</blockquote>

By:    s/ Renato Mariotti
<blockquote>
RENATO MARIOTTI<br>
EDWARD SISKEL<br>
Assistant United States Attorneys<br>
219 S. Dearborn Street<br>
Chicago, Illinois 60604<br>
(312) 886-7855
</blockquote>

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE**

was served on August 19, 2008, in accordance with FED. R. CRIM. P. 49, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

By:     s/ Renato Mariotti
        Renato Mariotti
        Assistant U.S. Attorney
        219 S. Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 886-7855